406 So.2d 313 (1981)
FORD MOTOR CREDIT COMPANY, Plaintiff-Appellee,
v.
Paul K. BREAUX and Doris W. Breaux, DefendantsPlaintiffs in Reconvention Third Party PlaintiffsAppellants.
No. 8479.
Court of Appeal of Louisiana, Third Circuit.
November 10, 1981.
*314 Brumfield & Brumfield, William P. Brumfield, Baton Rouge, for defendants-appellants.
Taylor, Porter, Brooks & Phillips by Vernon P. Middleton, Baton Rouge, for plaintiffs-appellees.
*315 Before DOMENGEAUX, SWIFT and YELVERTON,[*] JJ.
DOMENGEAUX, Judge.
This is a suit brought by Ford Motor Credit Company (Ford Credit), plaintiff-appellee, against Paul and Doris Breaux, defendants-appellants, to enforce a chattel mortgage via ordinaria and for a writ of sequestration. The Breauxs reconvened against Ford Credit, and brought third party actions against Ford Life Insurance Company (Ford Life), appellee, and Ford Motor Company. The trial court found in favor of Ford Credit and against the Breauxs, and awarded Ford Credit judgment in the amount of $3,409.15 plus 25% attorney's fees, interest, and costs. The trial court dismissed the Breauxs' reconventional demand and third party actions. The Breauxs have appealed against Ford Credit and Ford Life.
Paul and Doris Breaux purchased an automobile from New Roads Motor Company on August 2, 1975. The purchase was financed by way of a promissory note executed by the Breauxs and secured by a chattel mortgage on the automobile. Additionally, in conjunction with the chattel mortgage, the Breauxs purchased Credit Accident and Health Insurance through Ford Life.
Subsequent to the execution of the promissory note and chattel mortgage, New Roads Motor Company sold the note and its security to Ford Credit.
In March of 1976 Ford Life received notice of a claim of disability from Mr. Breaux resulting from an injury he received some time in 1975. Payments under the policy commenced upon such notice and continued through December of 1976.
Thereafter, the disability payments from Ford Life ceased, the promissory note became past due, and collection procedures were instituted by Ford Credit. In April of 1977 a Petition For Executory Process was filed by Ford Credit against the Breauxs. In response the Breauxs filed a Petition for Injunction to Enjoin the Executory Proceedings, and acquired a temporary restraining order to enjoin the seizure and sale until after a hearing on the merits. Following a hearing thereon, the Petition for Injunction was denied and the temporary restraining order dissolved. The Breauxs appealed the trial court's ruling, but before the matter could be heard the parties agreed by joint stipulation to dismiss the appeal without prejudice to the rights of either party. Thereafter, Ford Credit instituted this present suit via ordinaria, in which the Breauxs have reconvened, as aforementioned, against Ford Credit asking for, among other things, damages arising out of Ford Credit's improper use of executory proceedings.
Appellants claim on appeal that the trial court erred in failing:
(1) To find a wrongful seizure of their automobile by writ of seizure and sale under the executory proceedings in the first suit;
(2) To hold Ford Life and its parent company, Ford Motor Credit, liable for failure to provide payment of and/or credit for the monthly payments under the credit accident policy, issued by Ford Life;
(3) To find that the writ of sequestration in the instant proceeding was wrongful.

WRONGFUL SEIZURE THROUGH EXECUTORY PROCEEDINGS
LSA C.C.P. Art. 2635 requires that to prove a right to use executory process a plaintiff must produce, among other things, "(2) the authentic act of mortgage or privilege importing a confession of judgment." Appellants' uncontradicted testimony reveals that the chattel mortgage sued on was not executed by them in the presence of any witnesses. This testimony was corroborated by the New Roads Motor title clerk. *316 She testified that she could not remember whether or not she was present when the Breauxs signed the chattel mortgage. She estimates that on approximately three-fourths of the chattel mortgages that she signs as witness, the mortgagors are not present. The record conclusively shows that the chattel mortgage was not signed by the Breauxs in the presence of the witnesses therein. As such, it is not a properly authenticated document within the meaning of the terms as used in LSA C.C.P. Art. 2635. Ford Motor Credit Company v. Williams, 225 So.2d 717 (La.App. 1st Cir. 1969).
A seizure and sale under executory process on foreclosure under a chattel mortgage, which is not an authentic act, is illegal, giving rise to damages in tort. Mid-State Homes, Inc. v. Lartigue, 383 So.2d 99 (La.App. 3rd Cir. 1980); General Electric Credit Corporation v. Smigura, 371 So.2d 1363 (La.App. 3rd Cir. 1979).
We have reviewed the record in this case in an effort to ascertain an appropriate award for damages.[1] After so doing, we feel that an award in the amount of $350.00 for mental anguish, humiliation, and inconvenience resulting from the illegal seizure of their automobile under executory process is proper, and accordingly, we reverse that portion of the judgment of the trial court which denied such damages.
Appellants additionally sought attorney fees as a result of the illegal seizure. An award of attorney fees, however, is not authorized for dissolution of wrongful seizure under executory process. General Motors Acceptance Corporation v. Meyers, 385 So.2d 245 (La.1980).

LIABILITY OF FORD LIFE AND FORD CREDIT FOR DISCONTINUANCE OF DISABILITY PAYMENTS
Appellants contend that the mere existence of the credit accident and health insurance policy ipso facto gives rise to a suspension of the payments of the debt secured by the chattel mortgage upon the disability of the mortgagor-insured. In essence appellants claim that, once it is shown that insured was disabled, Ford Credit was obligated to look to Ford Life for payments, and not to the insured. We do not agree.
It is obvious that the mere existence of a policy of credit accident and health insurance does not automatically give rise to the suspension of a debt secured by the chattel mortgage upon the disability of the mortgagor-insured. Instead, there are simply two different contracts and different resulting rights in such a situation. The existence of the insurance policy does not operate to alter the contractual rights between the mortgagor and the mortgagee. Therefore, Ford Credit had a right to foreclose on their chattel mortgage upon default, and any claim for improper termination of insurance benefits exists exclusively between the insurer and the insured.
Appellants further contend that the termination of benefits when appellant was disabled were not justified, and were arbitrary, capricious, and without probable cause.
The Certificate of Insurance issued by Ford Life provides in paragraph 3 thereof:
"an insured Debtor will be considered totally disabled if, during the term of this insurance, he is prevented from performing all duties of his occupation or employment as a result of bodily injury sustained or sickness contracted and commencing while insured hereunder, which conditions require the insured Debtor to be treated regularly by a licensed physician other than himself." (Emphasis added).
The Certificate further provides in paragraph 9:
"PROOF OF DISABILITY: Notwithstanding the previous acceptance of proof of total disability and the payment of any *317 benefits therefor, Ford Life will have the right, at any time during the disability, to require proof of the continuance of such total disability. If the Debtor fails to furnish such proof of disability or if at any time such disability has terminated, no further benefit payments shall be made." (Emphasis added).
Briefly, Ford Life's procedure to obtain and continue a claim for disability benefits involves:
(1) completion and return of the disability forms (including continuation forms) forwarded by Ford Life to the insured;[2] and
(2) some showing by the insured that he is being treated by a licensed physician.
In Hardin v. Mutual Life Insurance Company of New York, 12 So.2d 488 (La.App. 2nd Cir. 1943) the court held that where a life insurance policy required the insurer to grant disability benefits upon receipt and approval of proof of total and permanent disability, the giving of notice by the insured of disability was a "suspensive condition" or "condition precedent" to the fixing of liability or disability benefits on part of the insurer. A fortiori, continued proof of disability was required here.
The trial court found and the record substantiates that both Ford Life and Ford Credit continually counselled and assisted Mr. Breaux relative to the need for, and the substantive information contained on, the continuation forms. The testimony of Mr. Breaux revealed that he was aware that the disability forms sent to him each month had to be properly completed in order that Ford Life could continue disability payments. In September of 1976, Mr. Breaux voluntarily discontinued seeing his treating physician, Doctor Bolton. Mrs. Breaux testified that in the Spring of 1977, she forwarded several proof of disability forms to Doctor Bolton for completion but never received them back from him. On March 3, 1977, Ford Life received a continuation of disability form on which the section to be completed by the treating physician was incomplete. Specifically, the information received by Ford Life indicated that Mr. Breaux had not received medical treatment since September 27, 1976. Accordingly, Ford Life advised Mr. Breaux on March 10, 1977, and March 31, 1977, that he was no longer eligible for benefits as he was required by the Certificate of Insurance to be under the treatment of a licensed physician. At no time after March 31, 1977, did Ford Life receive any proof of disability from Mr. Breaux. In his reasons for judgment the trial judge stated that in his opinion it was the failure of Mr. Breaux to comply with his contract to furnish proof of continued disability which caused the default of the note held by Ford Credit. After reviewing the evidence, in view of the great weight to be given the factual conclusions of the trial court, we find no manifest error in the trial court's finding that Ford Life was justified in discontinuing disability benefits. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).

WRONGFUL SEIZURE THROUGH WRIT OF SEQUESTRATION
LSA C.C.P. Art. 3571 provides:
"Grounds for Sequestration.

* * * * * *
(c) When one claims the ownership or right to possession of property, or a mortgage, lien, or privilege thereon, he may have the property seized under a writ of sequestration, if it is within the power of the defendant to conceal, dispose of, or waste the property or the revenues therefrom, or remove the property from the parish, during the pendency of the action."
Appellants contend that the seizure under the writ of sequestration was wrongfully issued and should have been dissolved by the trial court. They base their contention on the fact that Ford Credit failed to show *318 that the Breauxs would "conceal, dispose of or waste the property ... during the pendency of the action."
The article does not require a showing by the plaintiff that the defendant will conceal, dispose of or waste the property. On the contrary, a seizure by sequestration is proper "if it is within the power of the defendant to conceal, dispose of, or waste the property ... during the pendency of the action." It is obvious that to allow defendants continued possession of the collateral would afford them the opportunity to conceal, dispose of or waste the property, therefore we find no wrongful seizure by sequestration.

DECREE
For the foregoing reasons, the judgment appealed from is reversed in part, and it is hereby Ordered that there be judgment herein in favor of appellants and against appellee, Ford Motor Credit Company, in the amount of $350.00, with legal interest thereon from date of judicial demand until paid. In all other respects the judgment is affirmed.
Costs of this appeal are taxed one-half (½) to appellants and one-half (½) to appellee, Fort Motor Credit.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[*] Judge Henry L. Yelverton, Fourteenth Judicial District Court, Parish of Calcasieu, presided as Judge ad Hoc in this decision.
[1] We feel that it is significant that the error which caused the defect in the executory proceedings was minor in nature and completely unknown to the seizing mortgagee. Likewise, the measure of damages sustained is negligible due to the fact that a proper seizure of the automobile could have been, and in fact later was, achieved by writ of sequestration.
[2] In order for the form to be completed properly the insured must fill out part of the form and have his treating physician complete the remainder. Once the claim is authorized the insured must follow-up, to continue benefits, by completing forms for continued disability in a like manner.